1819.

M‘Arthur
v.
Browder.

———◦※◦———

(LOCAL LAW.)

## M‘ARTHUR v. BROWDER.

The rule which prevails in Kentucky and Ohio, as to land titles, is, that, *at law*, the patent is the foundation of title, and neither party can bring his entry before the Court: But a junior patentee, claiming under an elder entry, may, *in Chancery*, support his equitable title.

A description which will identify the lands is all that is necessary to the validity of a *grant*: but the law requires that an *entry* should be made with such certainty, that subsequent purchasers may be enabled to locate the adjacent residuum.

An entry for 1,000 acres of land in Ohio, on Deer creek, " beginning where the upper line of Ralph Morgan's entry crosses the creek, running with Morgan's line on each side of the creek 400 poles,

thence up the creek 400 poles in a direct line, thence from each side of the given line with the upper line at right angles with the side lines for quantity :" *held*, to be a valid entry.

Distinction between *amending* and *withdrawing* an entry.

APPEAL from the Circuit Court of Ohio.

The bill in equity filed in this cause by the appellant, M'Arthur, states, that George Mathews, on the 19th of September, 1799, made the following entry with the surveyor of the Virginia army lands.

"No. 3717 : 1799, September 19th. George Mathews, assignee, enters 1,000 acres of land, on part of a military warrant, No. 4795, on Deer creek, beginning where the upper line of Ralph Morgan's entry, No. 3665, crosses the creek, running with Morgan's line on each side of the creek 200 poles ; thence up the creek 400 poles on a direct line, thence from each side of the given line with the upper line, at right angles with the side lines for quantity."

That afterwards the entry of Ralph Morgan was withdrawn ; and that in consequence, George Mathews made the following entry : "No 3717 : 1801, October 26th. George Mathews, assignee, enters 1,000 acres of land on part of a military warrant, No. 4795, on Deer creek, beginning at two elms on the south west bank of the creek, upper corner to Henry Mossies' survey, No. 3925, running south 45 west 120 poles, north 65 west 172 poles, north 17 west 320 poles, north 76 east 485 poles, thence south 1 west 292 poles, thence to the beginning." The bill charges, that the last entry was not intended as a new one ; but only as an amendment or explanation of the first. This last entry was surveyed the 7th of

1819.

M'Arthur
v.
Browder.

October, 1807 : And upon an assignment to the complainant, the land embraced in the survey was patented to the plaintiff, the 16th of July, 1806.

The title of Browder, the respondent, is stated in the bill as follows :

That on the 20th of July, 1798, Nathaniel Randolph made the following entry : " No. 3310 : July 20, 1798. Nathaniel Randolph, assignee, enters 300 acres of land on three military warrants, Nos. 4165, 4250, and 4664, on the lower side of Deer creek, beginning at a walnut and two elms, cornered 5 poles from the bank of the creek, running south 61 west 200 poles to two white oaks, and two hickories, thence north 7 west 234 poles, thence north 61 east 200 poles, thence to the beginning." That the last entry was surveyed for Randolph, and the oldest patent obtained by him, which he conveyed to Browder, who has recovered upon an ejectment.

By the answer and exhibits, it appears, that Randolph's survey was made the 1st of August, 1798 ; that a patent was granted to Randolph, the 29th of September, 1800, who conveyed to the respondent. The respondent, Browder, having brought an action of ejectment, recovered the possession of the land in question ; and the appellant, M'Arthur, filed this bill in equity, praying for an injunction ; a conveyance of so much of the land claimed by the respondent, as interferes with his claim ; and for general relief. The bill was dismissed by the Circuit Court, and the cause brought by appeal to this Court.

*March 10th.*    This cause was argued by Mr. *Scott* and Mr.

*Brush,* for the appellant, and by the *Attorney General* and Mr. *Doddridge,* for the respondent.

Mr. Chief Justice MARSHALL delivered the opinion of the Court.

In this case, the appellee claims under the elder grant founded on the elder entry. Consequently, if his entry be valid, the bill of the appellant cannot be sustained. But the entry is so defective in description, that it was necessarily abandoned; and the appellee relies on his patent; anterior to the emanation of which, the appellant contends that the land was appropriated by his entry. The validity of this entry, also, is denied. But before we examine the objections made to it, we must consider those which have been urged against the jurisdiction of this Court as a Court of Equity.

The rule which prevails both in Kentucky and Ohio is, that, at law, the patent is the foundation of title, and that neither party can bring his entry before the Court. In consequence of this rule, it has been also well settled, that the junior patentee, claiming under an elder entry, may, in Chancery, support his equitable title, and obtain a decree for a conveyance of so much of the land as under his entry he may be entitled to. But the general principle is supposed to be inapplicable to this case, because the words of the entry are introduced into the grant; and if they were too vague to appropriate the land when used in the entry, they must be too vague to appropriate it when used in the grant, which is a

1819.

M'Arthur
v.
Browder.

The rule that
a junior paten-
tee, claiming
under an elder
entry, may, in
Chancery,
support his e-
quitable title,
applicable to
this case.

question triable at law, and which was tried in the ejectment brought by the appellee for the land.

Were the fact precisely as stated, it could not support the argument which is founded on it. When lands are granted, a description which will identify them is all that is necessary to the validity of the grant. But identity is not all that is necessary to the validity of an entry. The law requires that locations should be made with such certainty, that subsequent purchasers may be enabled to locate the adjacent residuum. All grants are founded on surveys. They recite the surveys, and all that is required in an ejectment is to prove that the land claimed is that which was surveyed. But more is required in a contest respecting an entry. Nothing is more common than for Courts to declare an entry void for uncertainty, notwithstanding the clearest proof that the land claimed, and that located, are the same.

There is then nothing in the resemblance between the words of the grant and of the entry, to distinguish this from other cases, in which the party claiming under the first good entry, comes into Chancery to obtain a conveyance of lands held under a senior patent. We proceed, then, to examine the entry under which the appellant claims. That entry is made for 1000 acres of land on Deer creek, " beginning where the upper line of Ralph Morgan's entry crosses the creek, running with Morgan's line on each side of the creek 200 poles, thence up the creek 400 poles on a direct line, thence from each side of the

given line, with the upper line at right angles with the side lines, for quantity."

That entries, which contain such descriptive words as clearly to designate the place where the land lies, shall with respect to their more particular locative calls, be supported, if they can on fair construction be supported, is a principle which pervades the whole of that curious and intricate fabric, which has been erected by the decisions on land titles in Kentucky, and has been taken as a model for those in the military district of Ohio. If a subsequent locator, brought to the spot where the lands lie, with the location in his hand, might by the application of the rules which the Courts have established, know how to place the entry so as to enable himself to locate the adjacent residuum, the entry must be sustained.

In this case it is admitted, that the beginning is described with sufficient certainty. The place where the upper line of Ralph Morgan's entry crosses Deer creek is ascertained. From that beginning the entry calls to run " with Ralph Morgan's line on each side of the creek 200 poles." It is said to be entirely uncertain whether this line is to be 200 poles on each side of the creek, so as to amount to 400 poles, or to be only a line of 200 poles altogether. Did this ambiguity really exist in the words themselves, it is entirely removed by the other parts of the location. The entry is made for 1,000 acres of land, and cannot, on any construction, be made to exceed 500 acres, unless the base line be 400 poles. We have then a given line of 400 poles. The entry then pro-

1819.

M'Arthur
v.
Browder.

What description is necessary to the validity of an entry.

ceeds, " thence up the creek 400 poles on a direct line." The plain meaning of these words is, that the land lies up the creek, so that a direct line of 400 poles will reach its upper boundary. If the location stopped here, adding only " for quantity," the decisions of Kentucky would establish it as a good entry for a square formed on the upper side of the base line of 400 poles, which would contain 1,000 acres of land. But the entry proceeds, " thence from each side of the given line, with the upper line at right angles with the side lines, for quantity." This part of the description has been said to produce uncertainty, because two lines are given, and a subsequent locator could not tell to which reference was made.

If it would make any difference whether the base line or the line up the creek was taken as the given line, this might produce some difficulty ; but if the entry must cover precisely the same ground, whether the one or the other be taken as the given line, it can make none.

Let the base line be considered as the given line. It is plain that the words from each side must mean from each end, because the land is to lie up the creek ; whereas, if you proceed from each side, it would lie partly down the creek. The line, too, which is to give the quantity with the side lines is the upper line, and that is removed from the base line the distance necessary to include the quantity of land required. As this quantity is to be inclosed from the whole entry taken together, within lines which form a square, the entry must be understood to require, that the side lines should be drawn from the ends of the base line,

and the inaccuracy of the expression could not mislead.

But the entry is understood to refer as the given line to that which is last mentioned ; that is, to the line of 400 poles, which is perpendicular to the base. You are then carried up the creek 400 poles in a direct line from the base line. From each side of this line you are carried " with the upper line at right angles with the side lines," until you get 1,000 acres. This construction gives full effect to every word of the entry, and gives a square which will contain 1,000 acres. It is, we think, the natural construction. The entry would be so understood by every subsequent locator. On any construction, then, which can be given to the words, the entry must not only have the same form, but must cover precisely the same land.

If, then, the original entry had never been amended, there could be no doubt of the right of the party claiming under it. This leads to the inquiry, whether the amendment affects this right.

The distinction between amending and withdrawing an entry is well established, and completely understood. An amended entry retains its original character, so far as it is unchanged by the amendment. So far as it is changed, it is a new entry. The survey, in this case, is understood to conform precisely to the amended entry ; and it contains a part of the land comprehended in the original entry. So far as respects the land within the appellee's patent, which is comprehended by the original entry, the amended entry, and the survey, we think the

*Distinction between* amending *and* withdrawing *an entry.*

appellant was entitled to a decree, and, consequently, the Circuit Court erred in dismissing his bill. The decree is to be reversed, and the cause remanded to the Circuit Court, with directions to enter a decree conforming to this opinion.

DECREE.—This cause came on to be heard on the transcript of the record of the Court of the United States for the seventh Circuit, and District of Ohio, and was argued by counsel. On consideration whereof, this Court is of opinion, that the plaintiff in the Circuit Court had a good title in equity to so much of the land contained in the defendant's patent, as is comprehended in the original entry made by George Matthews, in September, 1799, and also in his amended entry, and in his survey ; and that the decree of the said Circuit Court, dismissing the bill, is erroneous, and ought to be reversed, and it is, accordingly, Reversed ; and this Court doth farther Direct and Order, that the said cause be remanded to the said Circuit Court, with directions to enter a decree, directing the defendant to convey to the plaintiff so much of the land contained in his patent, as is comprehended in the original entry, and also in the amended entry and survey, on which the grant of the plaintiff was founded.